UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GRACE INSTRUMENT INDUSTRIES, LLC, §
§
    *Plaintiff,* §
§
VS. § CIVIL ACTION NO. 4:20-CV-01749
§
CHANDLER INSTRUMENTS COMPANY, §
LLC, *et al.,* §
§
    *Defendants.* §

## <u>ORDER</u>

Pending before this Court is Defendants Chandler Instruments Company, LLC d/b/a Chandler Engineering and AMETEK, Inc. d/b/a AMETEK Chandler Engineering's (collectively, "Chandler Instruments") Motion for Summary Judgment of Indefiniteness of U.S. Patent No. 7,412,877. (Doc. No. 192). Plaintiff Grace Instrument Industries, LLC ("Grace Instrument") responded in opposition. (Doc. No. 200). The Court is also in receipt of all replies, sur-replies, and supplemental briefing. (Doc. Nos. 205-2, 208, 219, 220). Upon close consideration of the pleadings, summary judgment evidence, and relevant legal standards, the Court hereby **DENIES** Chandler Instrument's Motion for Summary Judgment (Doc. No. 192).

### I.      Factual Background

This case, before this Court on remand from the Federal Circuit, arises from the alleged patent infringement of a viscometer—a device used by oil and gas drillers to test the viscosity of drilling fluid in a lab setting before it is used downhole. As the Federal Circuit aptly described, the viscosity of the drilling fluid "is critical to the well's operation—too high and the fluid is too hard to pump; too low and the fluid cannot carry the drill cuttings back to the surface." *Grace Instrument*

*Indus., LLC v. Chandler Instruments Co., LLC*, 57 F.4th 1001, 1004 (Fed. Cir. 2023). To accurately measure the viscosity of drilling fluid, "pressurization fluid is added to pressurize the sample drilling fluid within the viscometer to down-hole conditions while the sample fluid is stirred by a rotor to measure its viscosity." *Id.* "Ideally, the pressurization fluid does not mix with the sample fluid being measured to ensure that the viscometer reports the viscosity of only the sample fluid and not the viscosity of a mixture of the two fluids." *Id.*

While there have been other attempts to create a viscometer that separates the sample fluid from the pressurization fluid to ensure accurate measurements, *id.*, Hongfeng Bi, the owner of Grace Instrument, patented a specialized viscometer with an "enlarged chamber" that it contends is large enough to separate those fluids and eliminate this measurement problem. (Doc. No. 193-7). As the Federal Circuit described, "[t]his enlarged chamber is large enough such that the level of the sample fluid, which before pressurization initially fills both the lower chamber and the enlarged chamber, never falls below the transition point between the lower chamber and enlarged chamber when the application of the pressurization fluid compresses the sample fluid." 57 F.4th at 1004. The United States Patent Office approved United States Patent No. 7,412,877 ("'877 Patent") on August 19, 2008. (Doc. No. 193-7).

Relevant to the pending Motion for Summary Judgment, Claims 1 and 2 of '877 Patent describe the patented viscometer as:

A pressurized device comprising:

(a) a pressure vessel within which is vertically disposed at least one top section filled with a pressurization fluid of a first density and at least one lower section filled with a test sample of a second density,

(b) **an enlarged chamber** with reduced openings positioned between the at least one top section and the at least one bottom section for communication pressure with said top section and said lower section within said pressure vessel,

2

(c) whereby said pressurization fluid would not mix with said test sample before of the nature of their density difference.

(*Id.* at 11) (emphasis added).[1] This illustration provided in '877 Patent depicts this patented process:



Figure 1

(*Id.* at FIG. 1). The '877 Patent further describes:

> [W]hen pressurization fluid is applied, the sample fluid level is pushed down due to the compressibility of tested sample. Thus initial sample fluid inside of chamber 45 goes down to chamber 49 through small gap 25, and some of the initial sample fluid inside of chamber 49 goes down to the lower measurement zone through small gap 27. However, chamber 45 and chamber 49 are large enough so that at maximum rated pressure, chamber 49 is still at least half filled with sample fluid. This ensures the accuracy of the measurement because measurement zone below anti mixer bottom fin 82 is always totally filled with sample fluid.

(*Id.*). As the Federal Circuit summarized, "chambers 45 and 49 act together to contain the pressurization fluid as the sample fluid in a 'lower measurement zone' is compressed." 57 F.4th at 1005. This design is at the heart of this lawsuit, as Grace Instrument alleges that Chandler

---

[1] Grace Instrument alleges that Chandler Instruments infringed Claims 1 and 2 of '877 Patent through the design of a viscometer. The definitions provided in Claim 1 also apply to Claim 2, as Claim 2 incorporates these definitions to any "device of claim 1 wherein said pressurized device is a viscometer." (Doc. No. 193-7 at 11).

Instruments infringes on '877 Patent by using an "enlarged chamber" in competing viscometer models. (Doc. No. 151).

## II.    Procedural History

This dispute has been ongoing for many years. On May 19, 2020, Grace Instrument filed this lawsuit against Chandler Instruments, alleging that Chandler Instruments infringes on Claims 1, 2, 4, 5, 7, 8, 9, 11, 12, 14, 15, 17, and 18 of '877 Patent "by way of their tradename 'Model 7600' Viscometer" in violation of 35 U.S.C. § 271(a)-(c), (f). (Doc. No. 1 at 3).[2] After this Court conducted a *Markman* hearing in 2021, the Court issued a Memorandum and Order on Claim Construction for several disputed claim terms. (Doc. No. 69). The Court then, by agreement of the Parties, entered final judgment in favor of Chandler Instruments, holding that "Claims 1, 2, 4, 5, 7, 8, 9, 11, 14, 15, and 17 are invalid based on the Court's construction of 'enlarged chamber' as being indefinite" and that "Claims 4, 5, 7, 8, 9, 11, 14, 15, and 17 are not infringed based on the Court's construction of 'means for driving said rotor to rotate located in at least one bottom section' as meaning 'the means for driving is located in at least one bottom section.'" (Doc. No. 75). The Parties then appealed that Final Judgment to the United States Court of Appeals for the Federal Circuit. (Doc. No. 76).

The Federal Circuit affirmed-in-part and vacated-in-part the Final Judgment and remanded this case for further proceedings consistent with its opinion. 57 F.4th 1001. The court affirmed the holding that "Claims 4, 5, 7, 8, 9, 11, 14, 15, and 17 are not infringed based on the Court's construction of 'means for driving said rotor to rotate located in at least one bottom section' as meaning 'the means for driving is located in at least one bottom section.'" *Id.* Accordingly, Claims

---

[2] Grace Instrument has since amended their Complaint and now alleges that, in addition to the "Model 7600," the "Model 7550" also infringes the '877 Patent. (Doc. No. 151 at 3).

4, 5, 7, 8, 9, 11, 14, 15, and 17 are, as a matter of law, not infringed and are no longer at issue in this lawsuit. The Federal Circuit, however, vacated this Court's holding that Claims 1 and 2 are invalid based on the Court's ruling that the term "enlarged chamber" was indefinite.[3] *Id.*

This Court, in the first instance, determined that "enlarged chamber," as a "term of degree," is indefinite because '877 Patent failed to provide "objective boundaries for those of skill in the art" because it did not provide information about what object the "enlarged chamber" must be ***larger than*** to fall under the patent. (Doc. No. 69 at 9-10). The Federal Circuit, however, held that the term did establish objective boundaries, as the appropriate construction of the claim term is "a chamber that is ***large enough*** to contain excess test sample prior to pressurization to prevent mixing of the test sample and pressurization fluid in the lower measurement zone when the test sample is pressurized to maximum rated pressure." 57 F.4th at 1011. In other words, the Circuit held that "in the context of this patent, [the term] 'enlarged chamber' does not require that chamber to be ***larger than*** some baseline object; rather it must be ***large enough*** to accomplish a particular function." *Id.* While the Court may not entirely see eye to eye with the conclusion presented by the Federal Circuit, this Court is nonetheless bound by its revised construction of the claim term and therefore applies that revised definition to this analysis. *See Chaffin v. Braden*, No. 6:14-CV-0027, 2018 WL 1794766, at *4 n.5 (S.D. Tex. Apr. 16, 2018) ("This Court must and will apply the Federal Circuit's construction as the law of the case.").

Nevertheless, even with that construction of the claim term at issue, the Federal Circuit advised that "it appears that the indefiniteness question is not yet fully resolved and may require further fact finding on remand." 57 F.4th at 1011. The Federal Circuit, therefore, recognized the

---

[3] This Court held that "Claims 1, 2, 4, 5, 7, 8, 9, 11, 14, 15, and 17 are invalid based on the Court's construction of 'enlarged chamber' as being indefinite," (Doc. No. 75), but because the Federal Circuit affirmed the final judgment that Claims 4, 5, 7, 8, 9, 11, 14, 15, and 17 were not infringed, the Court only proceeds with Claims 1 and 2 for the purpose of this analysis.

possibility that the claims may be indefinite and invalid for other reasons, but it did not elaborate on what those reasons may be. *Id.* Following the remand and after conducting supplemental discovery, Chandler Instruments filed the pending Motion for Summary Judgment of Indefiniteness of U.S. Patent No. 7,412,877, arguing that the definition of "enlarged chamber" provided by the Federal Circuit is still indefinite because it "is dependent on the test sample used and the temperature applied at the maximum rated pressure." (Doc. No. 192 at 6). Chandler Instruments contends that because "the same device can meet the claim term under some conditions and not meet the claim term under other conditions, the claim term is indefinite." (*Id.*). The Court addresses this issue below and finds Chandler Instruments has failed to present clear and convincing evidence that a person of ordinary skill in the art would not understand with reasonable certainty how to accomplish the "enlarged chamber" function identified by the Federal Circuit.

### III. Legal Standards

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party

thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

"Summary judgment is as appropriate in a patent case as in any other. Where no issue of material fact remains and the movant is entitled to judgment as a matter of law, the court should utilize the salutary procedure of FED. R. CIV. P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

## IV.    Analysis

Chandler Instruments requests this Court to find as a matter of law that the term "enlarged chamber" in Claims 1 and 2 of '877 Patent, as defined on appeal by the Federal Circuit, is indefinite and therefore invalid as a matter of law. As noted above, Chandler Instruments contends that the revised definition of "enlarged chamber" as "a chamber that is large enough to contain excess test sample prior to pressurization to prevent mixing of the test sample and pressurization fluid in the lower measurement zone when the test sample is pressurized to maximum rated pressure," 57 F.4th at 1011, is indefinite because it "is dependent on the test sample used and the temperature applied at the maximum rated pressure." (Doc. No. 192 at 6). Specifically, Chandler Instruments provides one example wherein its two viscometers, using a specific drilling fluid referred to as "Aphron"

under certain temperature and pressure conditions, actually fails to prevent mixing of the two fluids, and thus, fails to satisfy the definition of "enlarged chamber" provided by the Federal Circuit. (*Id.* at 10–15). Accordingly, Chandler Instruments argues that this Aphron example demonstrates that the definition of "enlarged chamber" "is entirely dependent on the fluid and conditions applied to that fluid" and is therefore indefinite and invalid as a matter of law. (*Id.* at 15) (relying on *Geneva Pharmaceuticals, Inc. v. Glaxosmithkline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003)).

Grace Instrument disagrees with this characterization and contends that the Aphron example is a "fictional application" that "would never occur in the real world." (Doc. No. 200 at 10). Grace Instrument maintains that a person of ordinary skill in the art (commonly referred to as a "POSITA") "would understand with reasonable certainty how to accomplish the 'enlarged chamber' function identified by the Federal Circuit." (*Id.* at 9). Furthermore, Grace Instrument contends that by failing to raise this indefiniteness argument at the claim construction phase of this litigation or during the other two phases of dispositive briefing, Chandler Instruments has waived its right to assert this argument.

The Court addresses these arguments below by first addressing the waiver issue, then determining the appropriate definition of a POSITA in this matter, and finally by addressing the indefiniteness of the revised construction of the claim term "enlarged chamber." Based on the arguments of the Parties, the relevant legal standards, and the summary judgment evidence, the Court finds that Chandler Instruments has failed to present clear and convincing evidence that a POSITA would not understand with reasonable certainty how to accomplish the "enlarged chamber" function identified by the Federal Circuit. Accordingly, the Court denies the Motion for Summary Judgment.

8

## A. Waiver

The Court first addresses whether Chandler Instruments waived its right to raise this indefiniteness argument by failing to raise this argument during the claim construction phase. Grace Instrument contends that it has always maintained that the definition of the "enlarged chamber" is a chamber "large enough relative to the volume of the test chamber to fill any void created by compression of the test sample in the test chamber," *see* (Doc. No. 35-1 at 10) (Resp. to Motion for Summary Judgment) (Decl. of Hongfeng Bi), so that the failure by Chandler Instruments to raise this argument constitutes waiver. As Chandler Instruments points out, however, Grace Instrument has proposed several different definitions for "enlarged chamber" throughout this litigation:

| Date | Filing | Proposed Construction |
|---|---|---|
| February 3, 2021 | Patent Rule 4–3 Joint Claim Construction and Prehearing Statement (Doc. No. 29-1) | plain and ordinary meaning (no construction necessary) |
| February 22, 2021 | Response to Motion for Summary Judgment (Doc. No. 35 at 17) | describing "enlarged chamber" as "a viscometer configuration with an intermediate chamber enlarged enough to hold enough test sample fluid to fill any void created in the test chamber due to pressurization" |
| March 18, 2021 | Objection and Sur-Reply to Motion for Summary Judgment (Doc. No. 48 at 13) | proposing the definition of "enlarged chamber" as "the entire area 'between the at least one top section and the at least one bottom section' (i.e., the area between the top and bottom fins)" |
| March 24, 2021 | Opening Claim Construction Brief (Doc. No. 52 at 14) | describing the "enlarged chamber" as a chamber that "will hold enough test sample between the two reduced openings to fill the compression void created |

| | | below the bottom reduced opening" |
|---|---|---|
| April 14, 2021 | Reply Claim Construction Brief (Doc. No. 58 at 8) | proposing the definition of "enlarged chamber" to be "the area between reduced openings that is large enough to hold excess test sample (i.e., the type of fluid normally tested in these machines) to prevent mixing of pressurization fluid and test sample below the bottom fin during elevated pressurization" |

While this list of proposed definitions is not exhaustive, it demonstrates that as this litigation has evolved, so too have the proposed arguments concerning the description of "enlarged chamber." While some of the definitions proposed by Grace Instrument resemble the eventual construction of the claim term espoused by the Federal Circuit, Grace Instrument never proposed that exact definition to this Court. *Compare* (Doc. No. 58 at 8) ("the area between reduced openings that is large enough to hold excess test sample (i.e., the type of fluid normally tested in these machines) to prevent mixing of pressurization fluid and test sample below the bottom fin during elevated pressurization"), *with* 57 F.4th at 1011 ("a chamber that is large enough to contain excess test sample prior to pressurization to prevent mixing of the test sample and pressurization fluid in the lower measurement zone when the test sample is pressurized to maximum rated pressure").

Chandler Instruments argues that because Grace Instrument never proposed the Federal Circuit's definition to this Court, it could not have possibly waived its indefiniteness argument by failing to raise this argument earlier. The Court agrees. As other courts have recognized, "[n]othing in the law confines a party's indefiniteness argument to the claim construction stage of the litigation." *Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 834 (W.D. Tex. 2016)

(relying on *Conoco, Inc. v. Energy & Envtl, Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[A] district court may engage in claim construction during various phases of litigation, not just in a *Markman* order. We have recognized that district courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.")). Not only does the law not require parties to brief all possible indefiniteness arguments at the claim construction phase of the litigation, but there is certainly no requirement to brief defenses to a construction of a claim term that was seemingly arrived at on appeal. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 240 F. Supp. 3d 605, 625–26 (E.D. Tex. 2017) (finding that it was reasonable for the defendant to wait to raise the indefiniteness argument because the plaintiff proposed a different construction of the claim term during the claim construction phase of the litigation). Furthermore, the Federal Circuit noted that "it appears that the indefiniteness question is not yet fully resolved and may require further fact finding on remand" for the new construction of "enlarged chamber." 57 F.4th at 1011. Chandler Instruments has now asked the Court to do just that.

The Court heeds the advice of the Federal Circuit and finds that the new definition as set out by the Federal Circuit required new briefing on the alleged indefiniteness of the claim element of the "enlarged chamber." Accordingly, the Court finds that Chandler Instrument has not waived its right to assert this argument, and the Court proceeds with the substantive analysis of the dispute.

**B. Person of Ordinary Skill in the Art**

As the Federal Circuit also advised, this Court turns next to the definition of a "person of ordinary skill in the art" (or commonly referred to as a "POSITA"). *See* 57 F.4th at 1011 ("[T]he resolution of [the POSITA issue] may also be informative as to whether, on remand, the claims are again determined to be indefinite."). Before reaching the merits of the indefiniteness challenge,

11

the Court must first define a POSITA, as the definiteness of a claim term is to be evaluated from the perspective of a POSITA at the time the patent was filed. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 908 (2014); 35 U.S.C. § 112(a) (explaining that the specification of a patent "shall contain a written description of the invention . . . in such full, clear, concise, and exact terms as to enable *any person skilled in the art* to which it pertains, or with which it is most nearly connected, to make and use the same" (emphasis added)). "Factors that may be considered in determining level of ordinary skill in the art include: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) education level of active workers in the field." *Env't Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983). While the Parties propose definitions within the same ballpark, the Court must nevertheless tailor the definition appropriately.

Grace Instrument proposes that a POSITA in this case must have: (1) at least a mechanical engineering degree, (2) an understanding of the inner components of the prior art Fann Model 70 and 75 High Pressure/High Temperature ("HPHT") Viscometers, including an understanding of the mechanical make-up and operations of these devices, and (3) several years of experience in the oilfield instrumentation industry, which has to include experience in the design, development, and use of HPHT oilfield instruments but cannot be experience based solely on the use one of these instruments. (Doc. No. 200 at 11) (relying on (Doc. No. 200-1) (Decl. of Hongfeng Bi)). Hongfeng Bi, the owner of Grace Instrument and the inventor of '877 Patent, originally proposed that a POSITA should have "at least a mechanical engineering degree plus several years of experience in the oilfield instrumentation industry" because "[t]hat is what [he] had when [he] came up with the invention in the '877 Patent." (Doc. No. 35-1 at 1). Later in the litigation, Bi stated that a

12

POSITA should also have an understanding of the inner components of the prior art Fann Model 70 and 75 HPHT Viscometers, including an understanding of the mechanical make-up and operations of these devices. *See* (Doc. No. 111-1). Most recently, Bi further supplemented his proposed definition and stated that "to qualify as a POSITA, this 'several years of experience in the oilfield instrumentation industry' has to be experience in the design and development of HPHT oilfield instruments and cannot be experience merely using on of these instruments." (Doc. No. 200-1 at 4). Bi explained that "[t]his is an important distinction because users of these oilfield instruments (for example, oil and gas operating companies) do not become familiar enough with the inner workings of these instruments to gain the knowledge necessary to become a POSITA." (*Id.*).

Chandler Instruments first notes that, like the several proposed definitions of "enlarged chamber," Grace Instrument has continued to change its proposed definition of a POSITA and that it would be unfair for this Court to adopt the most recent version. Chandler Instruments contends that the appropriate definition of a POSITA in this case is a person that has "at least a Bachelor of Science degree in Mechanical Engineering *or a similar education background* and would have at least three years of experience with high pressure viscometers." (Doc. No. 205-2 at 7) (emphasis added). Chandler Instruments's retained expert, Dr. Reza Barati, states that because "the relevant art of the '877 Patent is in the general field of high pressure viscometers," a POSITA does not need the specialized knowledge referenced by Bi. (Doc. No. 205-3 at 3). Unlike Bi, though, Dr. Barati did not provide further explanation to support the proposed definition.

While these proposals do share some similarities (i.e., an engineering degree and experience working with HPHT viscometers), the Court notes that the differences in definitions could have a significant impact on the outcome of the issues before this Court. In fact, Grace

Instrument contends that this Court should not consider Chandler Instruments's expert, Dr. Barati, as a POSITA at all. While the Court addresses that dispute more directly in the indefiniteness analysis below, the Court nonetheless recognizes the importance of determining the appropriate definition of a POSITA in this case, which is why the Court sets out the definition here. Considering the patents involved in this litigation and how they are used, the Declarations of Bi and Dr. Barati, and the other evidence in this case, the Court finds that an appropriate POSITA in this case would have:

(a) at least a Bachelor of Science in Mechanical Engineering (or another similar educational background),

(b) at least five years of experience in the oilfield instrumentation industry, including the design and development of HPHT oilfield instruments, and

(c) experience with the use of HPHT viscometers in the oil and gas industry.

This definition largely falls in line with the proposals offered from both sides with one narrow exception. While Grace Instrument contends that a POSITA must have "an understanding of the inner components of the prior art Fann Model 70 and 75 HPHT Viscometers"—no doubt because Mr. Bi had experience with those technologies at the time he designed the '877 Patent, (Doc. No. 200-1)—the Court finds that such experience is not essential to understand the '877 Patent. While the Court finds that experience with the same prior arts as Bi rises to the level of extraordinary knowledge in the art (and is therefore too high a standard), *see Env't Designs*, 713 F.2d at 697, the Court finds that experience with the design and development of HPHT viscometers is necessary. Accordingly, the Court finds that a POSITA must have several years of experience working with the design and development of HPHT viscometers—not merely experience with *using* an HPHT viscometer. Finally, the Court finds that in addition to a POSITA having experience with the design and development, a POSITA must have experience with the use of

14

viscometers in the oil and gas industry, *i.e.*, familiarity with the types of drilling fluids that are actually used and the pressures and temperatures that are actually encountered by oil and gas companies. The Court applies this POSITA definition as it turns to the indefiniteness challenge.

## C. Indefiniteness

After the Federal Circuit remanded the case, Chandler Instruments filed the pending Motion for Summary Judgment of Indefiniteness requesting that this Court find that the Circuit's construction of the claim term is indefinite as a matter of law. (Doc. No. 192). The Federal Circuit held:

> [W]e find the term "enlarged chamber" in the '877 patent to mean "a chamber that *is large enough to contain excess test sample prior to pressurization to prevent mixing of the test sample and pressurization fluid in the lower measurement zone when the test sample is pressurized to maximum rated pressure*."

57 F.4th at 1011 (emphasis added). The Court adopts this construction of the claim term. Chandler Instruments argues that the Circuit's construction of "enlarged chamber" is indefinite because "whether or not the claim term is met is entirely dependent on at least the pressurization fluid used, the test sample used, and the temperature of the test sample used with a pressurized device or viscometer." (Doc. No. 192 at 8). Relying on an analysis conducted by Dr. Reza Barati, a professional in certain aspects of oil and gas technology,[4] Chandler Instruments argues that the use of Aphron drilling fluid in the disputed viscometers under certain temperature and pressure conditions fails to "prevent mixing of the test sample and pressurization fluid" and therefore fails to satisfy the constructed claim term. In other words, Chandler Instruments concludes that since

---

[4] According to his CV, Dr. Barati has his Ph.D. in Chemical and Petroleum Engineering. (Doc. No. 192-2 at 1). While most of his recent experience has been in academia and research, Dr. Barati also has a consulting agency, Petroeconomic Solutions, LLC, that has advised on asset development and reserve estimation for companies like Chesapeake Energy. *See generally* (*id.*). Dr. Barati also briefly worked directly for Chesapeake Energy as a reservoir engineer contractor. (*Id.* at 2).

there is one theoretical use under which the "enlarged chamber" will not work, the term must be indefinite.

Grace Instrument, on the other hand, argues that this analysis is without merit and, in fact, describes Dr. Barati's calculations as misleading. Grace Instrument emphasizes that the claim term is presumed to be definite, and Chandler Instruments has the burden to overcome that presumption with clear and convincing evidence. (Doc. No. 200 at 10). Not only does Grace Instrument contend that Chandler Instruments's proposed expert, Dr. Barati, fails to satisfy the definition of a POSITA in this case, but also Grace Instrument contends that his use of Aphron drilling fluid in the disputed viscometers under unrealistic temperature and pressure conditions is irrelevant and misleading. Grace Instrument argues that the evidence put forth by Hongfeng Bi (the inventor of the '877 Patent) demonstrates that the claim term is definite.

Section 112 requires that a patent must be sufficiently "definite," or in other words, "contain a written description of the invention, and of the manner and process of making and using it, in such *full, clear, concise, and exact terms* as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112(a) (emphasis added). Patents must also "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as the invention." *Id.* at § 112(b). The standard for "indefiniteness" is whether the "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). While this requirement allows for "a modicum of uncertainty" to incentivize innovation, *id.*, "a skilled artisan must know 'not only what falls inside the scope of the claim term, but also what falls outside of it.'" *Versata Software, Inc. v. Zoho*

*Corp.*, 213 F. Supp. 3d 829, 836–37 (W.D. Tex. 2016). Indefiniteness is "measured from the viewpoint of a skilled artisan at the time the patent was filed." *Nautilus*, 572 U.S. at 901. To show that a claim term is indefinite, Chandler Instruments must "overcom[e] the presumption of patent validity" and present "clear and convincing evidence that a skilled artisan could not discern the boundaries of the claims." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 240 F. Supp. 3d 605, 624 (E.D. Tex. 2017); *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1270, 1377 (Fed. Cir. 2017) ("Indefiniteness must be proven by clear and convincing evidence.").

The Court begins with a description of the analysis presented by Dr. Barati that is the basis of Chandler Instruments's indefiniteness argument. Dr. Barati contends that "the Federal Circuit's construction of 'enlarged chamber' is ambiguous" because the "compressibility of an Aphron fluid with 5-17 vol % air" leads to different results under specific conditions in the disputed viscometers. (Doc. No. 200-1 at ¶ 14). Dr. Barati calculated the compressibility of Aphron fluid in both Model 7600 and Model 7550 (the disputed Chandler Instruments viscometers)[5] under specific temperature and pressure conditions to determine whether the Aphron would, in fact, mix with the pressurization fluid and thus fail to satisfy the construction of "enlarged chamber." (*Id.* at ¶¶ 15-41). Specifically, Dr. Barati provided that his calculations demonstrate that for the Model 7600, 5% Aphron fluid tested under 44.3 °F and 40,000 pound-force per square inch ("PSI"), the "enlarged chamber" **would not** "be large enough to contain excess test sample . . . to prevent mixing." (*Id.* at ¶ 21). On the other hand, Dr. Barati provided that his calculations showed that for the Model 7600, 13% Aphron fluid under 44.3 °F and 4,000 psi **would** "be large enough to contain excess test sample . . . to prevent mixing." (*Id.* at ¶ 25). Dr. Barati ran similar calculations for

---

[5] The Court notes that Dr. Barati only used Chandler Instruments's Model 7600 and Model 7550 to calculate the compressibility of Aphron drilling fluid. *See generally* (Doc. No. 200-1). He did run calculations for any Grace Instrument viscometers. *See generally* (*id.*).

Model 7550. Specifically, Dr. Barati provided that his calculations showed that for the Model 7550, 11% Aphron fluid under 44.3 °F and 30,000 psi and 17% Aphron fluid at 44.3 °F and 4,000 psi **<u>would not</u>** "be large enough to contain excess test sample . . . to prevent mixing." (*Id.* at ¶ 35–37). On the other hand, 11% Aphron fluid 170.3 °F and 30,000 psi and 17% Aphron fluid 17% Aphron fluid at 170.3 °F and 4,000 psi **<u>would</u>** "be large enough to contain excess test sample . . . to prevent mixing." (*Id.* at ¶ 38–41).

Based on these calculations, Dr. Barati opined that "whether the intermediate chamber of a viscometer is large enough to contain excess test sample prior to pressurization to prevent mixing of the test sample and pressurization fluid in the lower measurement zone when the test sample is pressurized to maximum rated pressure, is dependent on the specific test sample used and the temperature applied during pressurization." (*Id.* at ¶ 42). Based upon these calculations, Chandler Instruments argues that the Federal Circuit's construction of "enlarged chamber" is indefinite. *See also Geneva*, 349 F.3d at 1384 (finding that a claim term is indefinite because "a formulation . . . might infringe or not depending on its usage in changing circumstances").

Grace Instrument challenges this conclusion in two ways. First, Grace Instrument argues that this Court should not accept these calculations as evidence of indefiniteness because Dr. Barati does not fall under the definition of a "POSITA." Second, Grace Instrument argues that, even if this Court accepts Dr. Barati as a POSITA, Dr. Barati only ran calculations using only two models made by Chandler Instruments and with a rare, novel drilling fluid that would never actually be used in the field. The Court addresses these arguments below.

### 1. Dr. Barati is not a POSITA.

Grace Instrument argues that Dr. Barati is not a POSITA, and therefore, the Court should not consider his calculations as evidence of indefiniteness. As the Supreme Court has advised,

indefiniteness is "measured from the viewpoint of a skilled artisan at the time the patent was filed." *Nautilus*, 572 U.S. at 901. As discussed in the preceding sections, this Court determined that an appropriate POSITA in this case would have:

(a) at least a Bachelor of Science in Mechanical Engineering or another similar educational background,

(b) at least five years of experience in the oilfield instrumentation industry, including the design and development of HPHT oilfield instruments, and

(c) experience with the use of HPHT viscometers in the oil and gas industry.

While this Court did not exactly adopt either of the parameters proposed by the Parties, the Court still considers the arguments regarding Dr. Barati and finds that he does not fall under the definition of a POSITA.

The Court concludes that Dr. Barati does have the necessary education to qualify as a POSITA.[6] *See* (Doc. No. 192-2 at 1). With that being said, however, the Court finds that Dr. Barati does not have the requisite experience working with the design, development, and use of HPHT viscometers. During his deposition, Dr. Barati was questioned extensively about his experience working with HPHT viscometers. (200-9 at 33:19–36:23). While he testified that he had some experience using the prior art viscometer models (such as the FANN 50), Dr. Barati has never used a viscometer from Grace Instrument or Chandler Instruments. (*Id.*). Dr. Barati testified:

Q: What is your experience with those high-pressure, high-temperature viscometers?

A: [. . .] We have used FANN before [] but at lower pressures and temperatures.

[. . .]

---

[6] Dr. Barati has a Ph.D. in Chemical and Petroleum Engineering, a Master's Degree in Petroleum Engineering, and a B.S. in Chemical Engineering. *See* (Doc. No. 192-3). The Court generally finds the arguments that Dr. Barati's chemical and petroleum engineering education is insufficient because his degrees are not in mechanical engineering to be unavailing. The Court finds that these engineering degrees are sufficient to satisfy the educational requirement of a POSITA.

Q: And the highest pressure you went to was 5,000 [. . .] psi?

A: Probably. That was a long time ago when I used it, so I don't remember exactly what pressure and temperature I did use, but it was not as high as 20,000 or 30,000 definitely.[7]

Q: Okay. So you've never used a FANN 70 or FANN 75 and taken it up to 20,000 psi; is that correct?

A: No, I have not.

Q: And you've never used a Grace HP/HT viscometer and taken it up to 30,000 psi?

A: I didn't even have one of those, no. I never had one of those.

Q: All right. And one of Chandler's HP/HT viscometers, the 7600, the 7550, have you ever used one of those?

A: No, I never had those.

Q: So you've never used any of those?

A: No.

(*Id.*). Not only did Dr. Barati admit that he has never owned or operated the disputed viscometers in this case, he also stated that he has "not been involved in design of this high-temperature, high-pressure equipment." (*Id.* at 73:13–18). While Dr. Barati concluded that he has "enough understanding of how [the technology] should work" and that he has "used them a lot,"[8] the Court finds that this experience falls short of the necessary experience to qualify as a POSITA in this case.

---

[7] It is interesting to note that Dr. Barati's conclusions concern the failure of the enlarged chamber involved pressures of 40,000 psi for the Model 7600 and 30,000 psi for the Model 7550—levels of pressure that Dr. Barati clearly stated that he has no experience using on any viscometer. *See generally* (Doc. No. 200-1).

[8] Dr. Barati's testimony makes clear that the "them" to which he refers is a reference to prior art, low pressure viscometers, and it is not a reference to any of the equipment at issue in this case. *See generally* (Doc. No. 200-9 at 33:19–36:23).

Perhaps even more convincing evidence is that the "tests" that Dr. Barati conducted to yield these results (and which form the heart of Chandler Instruments's indefiniteness challenge) were not actually performed on any of the devices at issue in this dispute. After all, he testified that he has never even operated the instruments. (*Id.* at 33:19–36:23). Dr. Barati merely used properties published by other professionals and used that preexisting data to calculate whether the enlarged chamber would prevent mixing with Aphron under certain conditions. *See* (Doc. Nos. 191-1 at ¶ 14, 192-2, 192-3). Unlike the other undisputed POSITAs in the case, Hongfeng Bi (the inventor of the '877 Patent) or Jeff Moon (the designer of the Chandler Instruments models), Dr. Barati has little to no experience with operating these HPHT viscometers—much less designing the instruments or using the technology in the field. For those reasons, the Court finds that Dr. Barati, based on the information before the Court, fails to meet the definition of a POSITA for the '877 Patent.

### 2. Even if the Court considered Dr. Barati as a POSITA, Chandler Instruments has failed to provide clear and convincing evidence of indefiniteness.

Regardless of the POSITA ruling concerning Dr. Barati, the Court finds that Chandler Instruments has still failed to meet its burden to prove that the "enlarged chamber" is indefinite as a matter of law. The Court proceeds with the merits of the indefiniteness analysis for the purposes of this Order.

In response to the indefiniteness argument presented by Chandler Instruments, Grace Instrument provides the testimony of Hongfeng Bi, the inventor of the '877 Patent. The Parties do not dispute that Bi is a POSITA in this case.[9] Bi opines that the '877 Patent and its prosecution

---

[9] Bi has a master's degree in mechanical engineering, and he began his career working at Fann Instrument Company, an oil and gas instrumentation company. (Doc. No. 200-1 at ¶ 14–15). While at Fann, Bi "focused on research and development of oilfield instruments, such as the HPHT instruments at issue in this case." (*Id.*). After working closely on the design of HPHT viscometers at Fann, Bi started Grace Instrument continued his research on the development and design of oilfield instruments. (*Id.* at ¶ 16).

history "define the 'enlarged chamber' claim term with reasonable certainty, especially when viewed through the eyes of a POSITA," and he directly addresses the analysis conducted by Dr. Barati. (Doc. No. 200-1 at ¶ 42, 49). While Dr. Barati exclusively relied on Aphron as his sample drilling fluid and did not run his calculations using any other type of drilling fluid, Bi contends that the use of Aphron is outside the scope of a POSITA. (*Id.* at ¶ 54). Bi states that "in the time leading up to the filing of [the] patent application on October 24, 2005, Aphron was a very rare drilling fluid only in its experimental stages of use" and that the use of Aphron went against the conventional understanding that drilling fluids with air bubbles are not suitable for drilling. (*Id.*) (quoting Doc. No. 200-26 at 12 ("Because of concerns about corrosion and well control, drillers generally discourage entrainment of air in drilling fluids; indeed, they go to substantial lengths to eliminate air altogether from drilling fluids.")). Bi further states that "[i]t would be highly unlikely for customers of the HPHT instruments at issue in this lawsuit to have been [] familiar with these Aphron fluids at this time, and nearly impossible for an actual POSITA . . . to have known about these fluids, been able to get a sample of this fluid, been able to test a sample of this fluid, and to have had knowledge of the properties of this fluid when designing features for an HPHT Viscometer." (*Id.* at ¶ 55).

In addition to the rarity of Aphron drilling fluid at the time the patent was filed, Bi also describes other practical reasons that Aphron would not be used in an HPHT viscometer. For example, as noted by scientific literature the time of the patent, "the presence of aphrons does not significantly affect viscosity." (*Id.* at ¶ 57) (relying on Doc. No. 192-12). It follows, according to Mr. Bi, that "since Aphrons do not significantly affect viscosity, there would be no reason for someone to put the Aphron chemicals (which create the bubbles) into the base drilling fluid to test it in a Viscometer." (*Id.*). "Instead, a user would simply test the base fluid so as not to waste time

and money dealing with the Aphron bubble creating chemicals." (*Id.*). Bi also describes that even if a POSITA used Aphron in a viscometer, "conventional wisdom in the drilling fluids industry was [that] the drilling fluids with air bubbles (like Aphron) could not survive at very high downhole pressures." (*Id.* at ¶ 58). At the time the patent was filed, Bi describes that there were no published findings that Aphron could survive at the HPHT conditions required by downhole drilling and simulated in a viscometer and that, instead, Aphron fluids were designed for low pressure wells. (*Id.* at ¶ 59, 60). Bi avers that "[t]his is further evidence that a POSITA would not consider Aphron drilling fluids because it has no relevance to the HPHT field and HPHT Viscometers." (*Id.*).

Importantly, Bi also indicates that the use of Aphron drilling fluid violates the '877 Patent. For example, "[t]he '877 Patent specifically states drilling fluids can only be tested in the claimed HPHT viscometers if they are heavier (i.e., have a higher density) than the pressurization fluid." (*Id.* at ¶ 62). The '877 Patent states "[t]he pressurization fluid should be chosen carefully. This pressurization fluid should not spontaneously dissolve into or mix with the tested sample, and should have a specific gravity lower than the specific gravity of the sample." (Doc. No. 200-2 at 6:13). Bi states that "for a large portion of Aphron drilling fluids . . . they cannot be tested in the type of Viscometer described in the '877 Patent because they are too light to stay below the pressurization fluid." (Doc. No. 200-1 at ¶ 63). Dr. Barati testified that he did not test or otherwise consider the densities of the Aphron drilling fluids in his calculations. (Doc. No. 200-9 at 62:20–64:21). In addition to failing to consider the densities contemplated in the '877 Patent, Dr. Barati apparently also failed to consider that the '877 Patent also instructs users to expel all air from the fluids. *See* (Doc. No. 200-2 at 5:20) ("Pump pressurization fluid from inlet 12 until all air inside of pressure vessel is expelled out through outlet 74."). Dr. Barati stated that the presence of the air bubbles in the Aphron fluid was critical to his calculations. *See* (Doc. No. 200-9 at 62:20–64:21).

In addition to concerns with Dr. Barati's choice of Aphron to conduct his calculations, Bi also contends that Dr. Barati's hypotheticals "do not have any support in the real world or simulate real world conditions." (Doc. No. 200-1 at ¶ 67). Given that the purpose of the HPHT viscometers "is to simulate real world drilling conditions, which will occur in actual drilling wells," Bi disputes the conditions imposed on the Aphron fluid in Dr. Barati's tests. (*Id.*). Dr. Barati primarily analyzed the Aphron drilling fluid "at 44.3 °F and 30,000 or 40,000 psi because these are maximum rates pressures for Chandler's devices which is what the Federal Circuit held is the relevant pressures." (*Id.*). Bi contends that this combination of the low temperature and the high pressure is unrealistic. He describes that it is commonly known that "temperature increases as the pressure increases as you drill into the [E]arth," and that the temperature rises about 72–87 °F per mile of drilling depth. (*Id.* at ¶ 68). Bi opines that "[a]t 36,058 feet (per [his] [] calculation that would be the needed oil depth to reach 30,000 psi with heaviest possible Aphron drilling fluid), the [E]arth's temperature would be at least around . . . 527 °F." (*Id.*). This is a far cry from the 44.3 °F at 30,000 psi calculation used by Dr. Barati. Given that "[t]he deepest vertical well ever drilled in the entire world . . . was 35,000 feet deep," Dr. Barati's calculations hardly replicate the conditions contemplated by the '877 Patent.

Chandler Instruments does not directly respond to these concerns—at least not with evidence that would undermine Bi's conclusions. In fact, when Dr. Barati was asked about how he decided to use the Aphron drilling fluid for his tests, Dr. Barati stated that when deciding which drilling fluid to use, he searched "for drilling fluid that have certain compressibility that could be mixed or not mixed if they're used in a . . . viscometer." (Doc. No. 200-9 at 42:8–11). In other words, one could conclude that Dr. Barati seemingly started with the conclusion he was hoping for and found the right drilling fluid to match, regardless of the industry standards or other

24

scientific practicalities. After all, Dr. Barati had no experience with testing Aphron in an HPHT viscometer, he could provide no examples of an Aphron fluid being used in the industry, he could provide no examples of Aphron tested under HPHT conditions, and he offered no explanation for how his combination of temperature and pressurization could be achieved downhole. *See* (*Id.* at 49:25–54:16).

The Supreme Court has consistently held that this Court must determine whether the "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901. The Court instructs that this inquiry requires a "delicate balance," and that this Court must consider the patent through the viewpoint of those skilled in the relevant art at the time the patent was approved. *Id.* at 909. While this standard certainly "mandates clarity," this Court must also recognize "that absolute precision is unattainable." *Id.* at 910. After all, "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Id.* (quoting *Minerals Separation, Ltd. v. Hyde*, 242 U.S. 261, 270 (1916)).

The Court finds that the evidence offered by Chandler Instruments to overcome the presumption of definiteness falls well short of "clear and convincing." *Sonix*, 844 F.3d at 1377 ("Indefiniteness must be proven by clear and convincing evidence."). Even assuming, *arguendo*, that the Court accepted Dr. Barati as a POSITA, which, as explained in the preceding section, it does not, the Court finds that his calculations alone are neither clear nor convincing. The competing evidence presented by Grace Instrument, including the testimony of an undisputed POSITA, Hongfeng Bi, demonstrates that the use of Aphron under the conditions imposed on the disputed viscometers does not replicate any practical use of the device and is not aligned with the purpose of the '877 Patent. Accordingly, the Court finds that Chandler Instruments has failed to

25

meet its burden to demonstrate that the claim term "enlarged chamber" fails to inform a POSITA, with reasonable certainty, the scope of the invention. The Motion for Summary Judgment (Doc. No. 192) is denied.

## V. Conclusion

For the foregoing reasons, the Court hereby denies Chandler Instruments's Motion for Summary Judgment of Indefiniteness of U.S. Patent No. 7,412,877 (Doc. No. 192). The Parties are ordered to file a Joint Status Report that outlines the remaining issues in this case and, if necessary, a Joint Scheduling Order outlining all the steps and deadlines that are necessary to resolve those issues. Those documents should be filed by **August 21, 2026**.

It is so ordered.

Signed on this the ____ day of July 2026.


Andrew S. Hanen
United States District Judge